IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN AKUBU** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 24-CV-6929 |
| | : | |
| **GEORGE W. HILL CORRECTIONAL** | : | |
| **FACILITY**, *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                             FEBRURARY 28, 2025

Plaintiff Johnathan Akubu, a prisoner currently incarcerated at the Lehigh County Jail, initiated this civil action by filing a *pro se* Complaint asserting constitutional claims pursuant to 42 U.S.C. § 1983 based on events that occurred while he was incarcerated at George W. Hill Correctional Facility ("GWH"). In the complaint, he names GWH and two of its employees, Warden L. Williams and Maintenance Supervisor A. Jackson, as Defendants. (ECF No. 2.) Akubu seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Akubu leave to proceed *in forma pauperis*, and the Complaint will be dismissed, *in part*.

**I.      FACTUAL ALLEGATIONS**[1]

Akubu alleges the events related to this lawsuit occurred while he was incarcerated at GWH. (*See* ECF No. 2 ("Compl.") at 2-3.) He asserts that on January 2, 2023, the maintenance crew was "on the Unit 10 Delta inside Cell 108 fixing the metal steel commissary drawer, which is attached

---

[1]   Akubu's Complaint consists of eight handwritten pages. (ECF No. 2.) The Court considers the entirety of the submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

1

to the lower bunk of the cell." (*Id*. at 4.) Defendant A. Jackson, the maintenance supervisor, "instructed one of his workers to kick the heavy metal steel drawer back into place." (*Id*.) After the worker kicked the drawer, it was still not fixed, and the worker told Jackson that he needed someone to hold up the drawer while he tried to kick it back into place. (*Id*.) Jackson then instructed Akubu to hold the drawer while the worker tried to fix it. (*Id*.) Akubu informed Jackson that he did not have "the training or skill to help his worker at that moment." (*Id*.) Jackson told Akubu that he did not "need training for this type of job" and needed to help if he wanted his drawer fixed. (*Id*.)

Akubu complied and held the drawer while the worker started kicking the drawer. (*Id*.) After the third kick, the drawer slammed shut "with so much force" that Akubu's right thumb "was caught in the process." (*Id*.) He instantly felt his thumb snap, followed by "immense pain and a lot of blood started squirting and spilling everywhere." (*Id*.) Sergeant Johnson, the unit supervisor, was notified about the incident, and Akubu was transported the medical unit, where he was given Tylenol and told he would be "fine." (*Id*.) He repeatedly told the nurse that he "felt something crack when the incident happened, but to no avail, they wrapped it up with a bandage." (*Id*. at 4-5.) There was so much blood "soaking through the bandage at a rapid pace that the medical staff had to keep changing the bandage." (*Id*. at 5.) An X-ray was taken a couple days after his injury, which revealed he had a fractured thumb, and he was scheduled to meet with an orthopedic doctor. (*Id*.) On June 6, 2023, while Akubu was still dealing with his thumb injury, he "sent the Warden Claim Department a tort claim letter notice to let the Warden Department know and make them aware of his upcoming legal action, so they could fully investigate." (*Id*.)

On October 2, 2023, Akubu was working at his job at GWH as the "A.M. Unit 10 Hallway Sanitation" employee. (*Id*.) That same day, while he was "doing his daily routine of sanitizing the

2

hallway," he spoke with Defendant L. Williams, GWH's Warden. (*Id*.) He asked Warden Williams if she had received "the tort claim letter notice that he had submitted to her office." (*Id*.) Warden Williams "seemed really unpleased and stated to him that there is nothing they could do for him at all." (*Id*.) Warden Williams then "proceeded to the Unit 10 Control Room and informed Sergeant Banks to strip him of his employment duties and change his classification to a Sergeant II," which would prevent him from getting another job. (*Id*. at 5-6.) Later that day, Sergeant Banks and the shift commander informed Akubu that Warden Williams sent an email to all the supervisors "to strip him of his job and remove him from the worker cell." (*Id*. at 6.)

Akubu alleges that since his incarceration at GWH beginning on March 3, 2022, he has been a "role model inmate" and has never received a misconduct or been placed in segregation. (*Id*.) He believes Warden Williams fired him from his job in retaliation for the legal action notice he sent stemming from his January 2, 2023, thumb injury. (*Id*. at 6-7.) His injuries include a fractured thumb, disfigurement, permanent loss of function, and pain and suffering. (*Id*. at 6.) Akubu requests monetary damages. (*Id.* at 7.)

## II.    STANDARD OF REVIEW

The Court grants Akubu leave to proceed *in forma pauperis*.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v.*

---

[2]    Because Akubu is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

*Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Akubu is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court is also obligated to dismiss any claims that seek monetary relief from an immune defendant. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

### III.  DISCUSSION

Akubu claims are brought pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

#### A.  Claims Against GWH

Akubu names GWH as a defendant in the caption of his Complaint. The § 1983 claim against GWH will be dismissed with prejudice because a jail is not a "person" under Section 1983.

4

*See Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, No. 20-4091, 2020 WL 7495665, at *6 (E.D. Pa. Dec. 21, 2020); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010).

### B. Claims against Jackson

Akubu appears to be asserting a negligence claim against Jackson, which he refers to as a tort claim, for the events that occurred on January 2, 2023, resulting in his thumb injury.[3] *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). The United States Supreme Court has held that § 1983 claims may not be predicated on a state actor's mere negligence. *See Canton v. Harris,* 489 U.S. 378, 387 (1989) (holding that mere negligence in the context of training cannot form basis of § 1983 liability); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property" ). A claim based on mere negligence is also insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring

---

[3] The Court cannot discern any other viable claims against Jackson. Notably, Akubu's Complaint makes clear that he received medical treatment for his thumb injury, including treatment on the day of the incident, and follow-up treatment with an X-ray and an appointment to meet with an orthopedic doctor. (*See* Compl. at 5.)

official control over a tumultuous cellblock."). Regardless of Akubu's legal characterization, the Court independently concludes that Jackson's oversight of the drawer repair and his direction that Akubu participate in a manner that led to his injury, at most, amounts to negligence, even under an appropriately liberal construction of the Complaint. *See Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (*per curiam*) ("The remaining claims against the maintenance supervisors for failing to fix and repair the table that collapsed, causing Innis's injury, were also properly dismissed. Mere negligence claims do not constitute 'deliberate indifference.'"); *Johnson v. Campbell*, 25 F. App'x 287, 288 (6th Cir. 2001) ("At most, the defendants were negligent for allowing Johnson to work in conditions in which his accident was possible. Johnson cannot base an Eighth Amendment claim on mere negligence."). Accordingly, Akubu has not alleged a plausible constitutional claim against Jackson.

Because his negligence claim against Jackson is not cognizable under Section 1983, the Court will construe this claim as a cause of action under state law. Under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), a local agency and its employees are granted immunity from tort liability,[4] with only a few narrow exceptions. *See* 42 Pa. Cons. Stat. Ann. §§ 8541-50. The Act provides that a local agency is excepted from "liabil[ity] for any damages on account of any injury to a person or property caused by the act of the local agency or an employee thereof." 42 Pa. Cons. Stat. § 8541. The "defense of official immunity" applies to "[a]n employee of a local agency" sued in his or her individual capacity "only to the same extent as his employing local agency." *Id*. § 8545; *Milbourne v. Baker*, No. 11-1866, 2012 WL 1889148, at *5 (E.D. Pa. May

---

4       The Act defines a local agency to which the immunity provision applies as a "government unit other than the Commonwealth government." *See* 42 Pa. Cons. Stat. § 8501. GWH is operated by Delaware County, which falls within this definition. Jackson is identified as the Maintenance Supervisor at GWH, and the Complaint reflects that he was acting in the scope of his employment during the events in question. (*See* Compl. at 3.)

23, 2012) ("With respect to plaintiff's individual-capacity claim . . . the [PSTCA] states that employees of a local agency are entitled to the same immunity as their employer.") (citing § 8545). However, the Act does not shield an employee against personal capacity claims where the employee has engaged in "a crime, actual fraud, or willful misconduct." *See* 42 Pa. Const. Stat. § 8550; *see also McNeal v. City of Easton*, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991) (establishing that a "finding of 'willful misconduct' under § 8550 requires a party to have acted with even more than gross negligence or recklessness"); *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 672–73 (E.D. Pa. 2017) (quoting 42 Pa. Const. Stat. Ann. § 8550) ("Pennsylvania law has long immunized municipal employees from civil tort liability unless they act with 'willful misconduct.'"); *Jackson v. City of Philadelphia*, No. 11-4643, 2015 WL 2070084, at *6 (E.D. Pa. May 4, 2015) ("Gross negligence or recklessness is insufficient to substantiate a finding of willful misconduct."); *Hernandez v. York County*, No. 06-1176, 2007 WL 4198017 (M.D. Pa. Nov. 26, 2007) (finding defendant immune under the PSTCA from claim of gross negligence), *aff'd*, 288 F. App'x 781 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit has explained that "'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)).

The PSTCA, thus, effectively bars all negligence actions against counties and their employees, unless brought under one of the enumerated statutory exceptions.[5] The exceptions to immunity are to be "strictly and narrowly construed." *Hanna v. Lehigh County Dep't of Corr.*, No. 22-4305, 2024 WL 1259269, at *8 (E.D. Pa. Mar. 25, 2024) (citing *Sugalski v. Commonwealth*, 569 A.2d 1017, 1019 (Pa. Commw. Ct. 1990); *see also Southersby Dev. Corp. v. Twp. of South*

---

[5] The exceptions to immunity are: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, (8) care, custody or control of animals, and (9) sexual abuse. *See* 42 Pa. Const. Stat. § 8542(b).

*Park*, No. 14-1248, 2015 WL 1757767, at *10 (W.D. Pa. Apr. 17, 2015) ("Because the legislative intent of the PSTCA is to insulate political subdivisions from liability, the exceptions to immunity are to be interpreted narrowly.") (citation omitted). As none of the exceptions are applicable to the facts alleged in the complaint, the Court must dismiss Akubu's negligence claim against Jackson as barred by immunity. This claim will be dismissed with prejudice as amendment would be futile.

C.     **Claims against Warden Williams**

Akubu's claim against Warden Williams is best characterized as a claim under the First Amendment.[6] Akubu alleged that Warden Williams fired him from his prison job, removed him from the worker cell, and degraded his security classification to prevent him from gaining future employment in retaliation for giving her notice of his intent to pursue legal action based on his January 2, 2023, thumb injury.[7] (*See* Compl. at 5-6.) In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct;

---

[6]     Akubu requests for the Court to hold Warden Williams accountable for cruel and unusual punishment for firing him from his job at GWH. (ECF No. 2 at 7.) The Eighth Amendment's prohibition against cruel and unusual punishment generally pertains to the actions or conduct of prison officials with respect to a prisoner's confinement, such as prohibiting the use of excessive force, and imposes a duty to provide "humane conditions of confinement." *See Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 256 (3d Cir. 2010) (internal quotations omitted). Akubu's allegations about losing his job are properly analyzed under the First Amendment.

[7]     To the extent Akubu attempted to raise an independent due process claim under the Fourteenth Amendment, the loss of a prison job does not give rise to a protected liberty interest because inmates do not have a constitutional right to employment during incarceration. *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (*per curiam*) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989))); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (*per curiam*) ("[P]risoners enjoy no protected interest in prison employment."). It is also well-settled that prisoners have no inherent constitutional right to any particular security classification or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same). As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Therefore, Akubu's allegations related to the loss of his prison job, security classification and preferred cell assignment do not allege independent violations of his constitutional rights.

(2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  A prisoner's filing of a grievance or lawsuit constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Mitchell*, 318 F.3d at 530. "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original).

As to the first prong, the filing of a lawsuit "satisfies the constitutionally protected conduct prong of a retaliation claim." *DeFranco v. Wolfe,* 387 F. App'x 147, 157 (3d Cir. 2010) (stating that there is "no doubt that filing a lawsuit is constitutionally protected conduct" for purposes of a retaliatory transfer claim).  Although it appears his legal action was not yet filed at the time the alleged retaliation occurred, the United States Court of Appeals for the Third Circuit has found the constitutionally protected activity prong is satisfied when informing prison officials of an *intent* to file a lawsuit or a grievance. *See Brant v. Varano,* 717 F. App'x 146, 149 (3d Cir. 2017) (holding that the prisoner engaged in protected activity when informing prison official of his intent to file a lawsuit prior to the retaliatory conduct of destroying his legal materials); *see also*, *Watson*, 834 F.3d at 422-423 ("[W]e cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other.").  Therefore, in the spirit of *Brant* and *Watson*, the Court finds that Akubu's notice to Warden Williams of his intent to pursue legal action qualifies as protected activity.

For the second prong, Akubu's allegations that he was fired from his job at GWH, degraded in security classification, and removed from the worker cell are sufficient to show that he suffered an adverse action at this stage of the proceeding. *See Pepe v. Lamas*, 679 F. App'x 173, 175–76 (3d Cir. 2017) (citing *Dewalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000) (holding that a prisoner can bring a retaliation claim based on the loss of his prison job)); *Medina v. Hallman*, No. 20-2426, 2020 WL 5646452, at *3 (E.D. Pa. Sept. 22, 2020) (same); *see also Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (Retaliation may be actionable for placement in administrative segregation, "even when the retaliatory action does not involve a liberty interest") (citing *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000) (holding that plaintiff stated claim for retaliatory transfer even though no liberty interest involved in transfer))).

Lastly, Akubu must allege a causal link between the protected conduct and the alleged act of retaliation. He has done so. The timing of his allegations — specifically that he was fired from his prison job on the same date that he personally notified Warden Williams about the legal action notice he previously sent to her office—and that he received notification from other prison officials later that day that Warden Williams sent an email to GWH supervisors about his job termination, degraded security clearance, and removal from the worker cell, is sufficient at this early stage to plausibly raise an inference of causation between the protected conduct and the adverse action. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Accordingly, Akubu's allegations state a plausible First Amendment retaliation claim against Warden Williams, and the Court will direct service of this claim.

## IV. CONCLUSION

For the reasons set forth, the Court will grant Akubu leave to proceed *in forma pauperis* and direct service of Akubu's Complaint on Defendant Warden L. Williams so that Akubu may proceed

10

on his First Amendment retaliation claim *only*. The remaining claims against Defendants GWH and Maintenance Supervisor A. Jackson are dismissed with prejudice since any attempt at amendment would be futile. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108, 110 (3d Cir. 2002) (district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile").

An appropriate Order will be entered.

*NITZA I. QUIÑONES ALEJANDRO, J.*